IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**JONAH STRINGER**                                                                                  **PLAINTIFF**

VS.                                                                        CAUSE NO: _____

**ERIK MENDEZ CRUZ; RICH TRANSPORT, LLC dba RICH
LOGISTICS; and JOHN AND JANE DOES 1-10**                                  **DEFENDANTS**

## COMPLAINT
(Jury Trial Demanded)

COMES NOW Plaintiff, Jonah Stringer, ("Plaintiff"), by and through the undersigned counsel, and files this Complaint against Defendants, Erik Mendez Cruz and Rich Transport, LLC dba Rich Logistics for this cause of action and would show unto the Court the following matters and facts, to wit:

## PARTIES

1.  Plaintiff Jonah Stringer is an adult resident of Jasper County, Mississippi who maintains his primary domicile at 2334 CR 23, Bay Spring, Mississippi, 39422.

2.  Defendant Rich Transport, LLC dba Rich Logistics (hereinafter "Rich") is an Arkansas based corporation located in Arkansas and doing business in Mississippi. It may be served with process of this court by serving its key principle, Shannon Everett at 4600 McCain Blvd, Little Rock, AR, 72117.

3.  Defendant Erik Mendez Cruz (hereinafter "Cruz") is an adult resident of Pulaski County, Arkansas, who can be served with process of this Court by certified mail as he is an out of state Defendant to P.O. Box 8091, Little Rock, Arkansas, 72203.

4.  Defendants John and Jane Does 1-10 are the true names or capacities whether individual, corporate, associate or otherwise and are unknown to the Plaintiff, who therefore sues said Defendants by such fictitious names.

5.  Defendants John and Jane Does 1-10 are corporations, entities, businesses, construction companies, design companies, individuals, and the like which are presently unknown to Plaintiff, but who are liable in this cause, and who are individuals the Plaintiff asserts are currently unable to be identified despite diligent efforts. The group includes any owners, management entities, insurance companies, managers, or employees of the above-named Defendants or any entity or individual related to or associated with them that caused or contributed to the injuries suffered by Plaintiff.

## VENUE

6.  This is an action for damages, costs and post-judgment interest in an amount that is above the jurisdictional minimum of this Court. Pursuant to 28 U.S.C. §1332(a)(1), "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interests and costs, and is between – (1) citizens of difference States." This is an action for damages, costs, and post-judgment interest and this court has subject matter jurisdiction because the amount in controversy exceeds $75,000.00. Further, diversity of citizenship exists as the Plaintiff is a citizen of Mississippi and the Defendants are citizens of Arkansas and the business is located in Arkansas.

7.  This Court further has jurisdiction over the Defendants because they conduct business in the State of Mississippi and because they committed the tortious act that gives rise to this action in the State of Mississippi.

8.  Venue is proper in this Court pursuant to 28 U.S.C. §1391 as a "substantial part of the events or omissions giving rise to the claim" involve damages from a crash that occurred in Pearl River County, Mississippi.

## FACTS

9. The transportation of goods in interstate commerce constitutes an ultra-hazardous activity that presents substantial dangers to the driving public when not done safely, properly and with due caution. Accordingly, there are a number of federal regulations, state statutes, industry standards and local ordinances that govern the qualification, training, supervision, and retention of professional tractor-trailer drivers, the proper maintenance and equipment for commercial motor vehicles, and the safe operation of brokers, motor carriers, commercial motor vehicles and professional truck drivers.

10. At all times material, RICH was authorized to transport goods in interstate commerce and in the State of Mississippi pursuant to one or more permits issued by the Interstate Commerce Commission and/or by the United States Department of Transportation ("USDOT"). Accordingly, Defendant RICH was subject to all state and federal laws, statutes, regulations and industry standards governing the hiring of safe and qualified commercial drivers, the safe maintenance and operation of commercial motor vehicles, and the safe brokering of goods in interstate commerce.

11. At all times relevant hereto, Defendant RICH should have also been an authorized interstate motor carrier authorized to transport goods in interstate commerce and in Mississippi pursuant to one or more permits issued by the Interstate Commerce Commission and/or by the USDOT but failed to obtain the required authority.

12. Accordingly, Defendant RICH was subject to all state and federal laws, statutes regulations and industry standards governing the hiring of safe and qualified commercial drivers, the safe maintenance and operation of commercial motor vehicles, and the safe brokering of goods in interstate commerce, including, without limitation, the FMCSRs set forth

in subchapters A and B of Chapter III of the Code of Federal Regulations, Title 49 – Transportation.

13. In return for the privilege to operate commercial motor vehicles on the public highways transporting goods in interstate commerce, motor carriers must make certain safety related certifications and verifications to the USDOT. If it had obtained proper interstate operating authority, RICH would have submitted a Form OP-1 Application for Motor Property Carrier and Broker Authority or equivalent.

14. Each OP-1 Application contains a "Safety Certification", certifying to the Federal Motor Carrier Safety Administration ("FMCSA") that the motor carrier or broker had access to and was familiar with all applicable USDOT regulations relating to the safe operation of commercial motor vehicles, and that they would comply with the FMCSRs at all times while operating a commercial motor vehicle in the United States.

15. Had RICH obtained proper motor carrier authority, it would have also been required to submit an MCS-150 form to the USDOT that also contained similar safety certifications signed under penalty of perjury that it was familiar with the FMCSRs.

16. At all relevant times, RICH did not have operating authority to broker, arrange for transport, or transport loads in interstate commerce.

17. Had RICH applied for and obtained the necessary operating authority to broker or transport loads in interstate commerce, it would have made the same safety certifications and agreed to comply with the obligations set forth in the above paragraphs.

18. CRUZ was not listed as a licensed commercial motor vehicle operator on the Mississippi Uniform Crash Report SO23-004934, and was driving a 2019 Freightliner Medium/heavy Truck – COE, high entry, bearing VIN #3AKJGLDR7KDKP6088 and towing a

4

trailer carrying car parts (herein collectively referred to as the "Tractor Trailer") under the authority of RICH.

19. Accordingly, CRUZ was subject to all state and federal laws, statutes, regulations and industry standards governing the safe maintenance and operation of commercial motor vehicles.

20. At all times material, the Tractor Trailer was owned and/or operated by RICH, and was being operated by CRUZ with RICH's consent for the benefit of RICH.

21. At all times material, CRUZ was an employee, agent, apparent agent and/or servant contracted to perform services for RICH. At the time and place hereinafter described, CRUZ was acting within the course and scope of said employment, agency, apparent agency, and/or service and subject to RICH's control or right to control, such that RICH was his actual and statutory employer, agent, apparent agent and/or servant and, therefore, vicariously liable for CRUZ's negligence.

22. At all times material, RICH had non-delegable duties to ensure that its drivers and vehicles were reasonably safe and complied with all laws, regulations and industry standards concerning the safe operation of commercial motor vehicles.

## FACTS REGARDING THE CRASH

23. On March 23, 2023, Plaintiff was the driver of a 2014 Dodge Ram that was headed Southbound on I-59.

24. Without any hazard notification warnings, and after a download of the vehicle driven by our client, the evidence shows that the Defendant CRUZ was driving 30mph which is under the minimum speed for a tractor trailer on an interstate.

25. Defendant driver CRUZ was unable to speak English which is also in violation of 49 CFR 391.11(b)(2) General qualification of drivers which states:

5

(b) Except as provided in subpart G of this part, a person is qualified to drive a motor vehicle if he/she –

(2) Can read and speak the English language sufficiently to converse with the general public, to understand highway traffic signs and signals in English language, to respond to official inquiries, and to make entries on reports and records.

26. The violent impact of the Crash resulted in severe and life-threatening injuries to the Plaintiff.

27. Each Defendant acted in a manner that either alone or combined with the actions of other Defendant's acts of negligence, directly, and proximately caused the Crash and Plaintiff's Damages.

## NEGLIGENCE OF DEFENDANTS

27. Plaintiff realleges and incorporates herein by reference the above and foregoing paragraphs 1 through 27.

28. Defendants owed a duty to operate the Tractor Trailer in a safe and reasonable manner under the circumstances. Defendants breached this duty toward Plaintiff by:

a. failing to conduct a pre-trip inspection, check and maintenance of the Tractor Trailer;

b. failing to comply with the Federal Motor Vehicle Safety Regulations; state law(s) and interstate use privilege(s);

c. failing to maintain the Tractor Trailer;

d. failing to adequately train and comply with RICH's internal policies and procedures;

e. failing to follow the Rules of the Road in Mississippi;

f.  driving under the minimum speed limit upon main-traveled part of highway when in violation of Miss. Code Ann. 63-3-509;

g.  failing to appreciate approaching traffic;

h.  failing to operate the Tractor-Trailer in accordance with generally accepted safety principles and practices of the trucking industry;

i.  failing to operate the Tractor-Trailer in accordance with the minimum safety guidelines set forth in Mississippi Statutes Chapter 63 and the FMCSRs, company safety policies, generally accepted safety principles and practices of the trucking industry;

k.  failing to hire appropriately trained and qualified drivers;

u.  failing to train employee drivers;

v.  failing to maintain the equipment, the brakes, conduct a pre-trip inspection, complete proper logs, and complete post-crash investigation of the crash;

w.  failing to conduct post-crash requirements contained in the Federal Motor Vehicle Safety Regulations;

x.  failing to adhere to State Law, Federal Law and the Federal Motor Carrier Safety Regulations; and,

y.  in other respects as will be shown at the trial of this cause.

29. Defendant CRUZ is liable for the actions when he recklessly and negligently drove the Tractor Trailer under the minimum speed limit and without hazard warnings.

30. All acts of CRUZ are imputed to RICH as he was operating in the course and scope of his employment.

31. If a jury finds CRUZ acted negligently, Defendant RICH is liable to Plaintiff under the theory of respondeat superior and/or vicarious liability.

32.     Defendant RICH negligently hired CRUZ and negligently entrusted him with the Tractor-Trailer and/or improperly trained him in operating the Tractor-Trailer, failed to properly maintain the equipment and/or failed to adhere to the Federal Motor Vehicle Carrier Safety Regulations.

33.     By reason of Defendants' negligence, and as a direct and proximate result thereof, Plaintiff suffered Plaintiff's Damages.

34.     Plaintiff has suffered and continues to suffer mental anguish and emotional distress, and other applicable damages under Mississippi law.

## ACTIVE NEGLIGENCE OF CRUZ

35.     Plaintiff realleges and incorporates herein by reference the above and foregoing paragraphs 1 through 34.

36.     At all times material hereto, CRUZ had non-delegable duties to operate the Tractor-Trailer in a reasonable and safe manner and to know of and abide by all state and federal laws, statutes, regulations and industry standards governing the safe operation and parking of commercial motor vehicles, including without limitation, Mississippi law governing state traffic control and rules of the road and the FMCSRs.

37.     CRUZ breached those duties in one or more of, but not limited to, the following ways:

a.  failing to appreciate approaching traffic;

b.  failing to operate the Tractor-Trailer in accordance with generally accepted safety principles and practices of the trucking industry;

c.  failing to operate the Tractor-Trailer in accordance with the minimum safety guidelines set forth in Mississippi Statutes Chapter 63 and the FMCSRs, company

8

safety policies, generally accepted safety principles and practices of the trucking industry.

38. CRUZ negligently and carelessly breached the duties he owed to the driving public who were exposed to his actions, including Plaintiff and violated laws that were intended to protect motorists like the Plaintiff.

39. CRUZ's negligence directly and proximately caused Plaintiff's Damages.

### ACTIVE NEGLIGENCE OF RICH TRANSPORT, LLC

40. Plaintiff realleges and incorporates herein by reference the above and foregoing paragraphs 1 through 39.

41. RICH had a non-delegable duty to ensure that its drivers and vehicles were reasonably safe and complied with all laws and industry standards concerning the safe operation and maintenance of commercial motor vehicles in interstate commerce.

42. Upon information and belief, RICH breached the above-mentioned duties and was therefore negligent in one or more of, but not limited to, the following ways:

    a. prior to hiring, selecting, or otherwise contracting with CRUZ, failing to conduct reasonable due diligence, or to retain a competent third party to conduct due diligence, into the safety record, driving history, training, experience and licensure of CRUZ;

    b. failing to properly supervise, train, and instruct its driver CRUZ in safely and properly driving the Tractor-Trailer;

    c. failing to verify that CRUZ operated the Tractor-Trailer in a reasonably safe manner and abided by all laws governing the safe operation of commercial motor vehicles;

    d. negligently entrusting the Tractor-Trailer, a dangerous instrumentality, to CRUZ;

e. negligently supervising CRUZ;

f. negligently retaining CRUZ;

g. hiring and/or continuing to employ CRUZ despite the fact that it knew or should have known he was unfit to safely operate a commercial vehicle;

h. failing to have an appropriate disciplinary policy within the company;

i. failing to adopt appropriate employee manuals and/or training procedures;

j. failing to enforce both the written and unwritten policies of RICH;

k. failing to ensure that its employees, drivers and/or agents were aware of and complied with the written and unwritten policies of RICH;

l. failing to implement and/or enforce an effective safety system;

m. failing to ensure that its management personnel and drivers were aware of the requirements and dictates of the FMCSRs;

n. failing to ensure that its employees, drivers and/or agents complied with the provisions of the FMCSRs;

o. failing to ensure that its employees, drivers and/or agents were aware of and complied with the rules, laws and regulations pertaining to and governing the safe operation of commercial motor vehicles;

p. violating the applicable rules, laws and regulations pertaining to and governing the safe operation of commercial motor vehicles;

q. failing to monitor and/or regulate its drivers' actions;

r. placing more emphasis on profits than on the safety of its drivers and the motor public;

s. knowingly violating federal and state laws regarding the responsibilities of motor carriers and the safe operation of commercial vehicles;

t.  failing to act upon and remedy known violations of FMCSRs;

u.  failing to act upon and remedy known violations of industry standards;

v.  acting in conscious disregard for the rights and safety of the motoring public, including the Plaintiff;

w.  failing to have appropriate policies and procedures with regard to the hiring of its drivers;

x.  failing to follow the written and/or unwritten policies and procedures with regard to the hiring of its drivers;

y.  failing to have appropriate policies and procedures with regard to the monitoring of its drivers;

z.  failing to follow the written and/or unwritten policies and procedures with regard to the monitoring of its drivers;

aa.  habitually and recklessly disregarding state and federal laws and regulations and industry standards governing the safe hiring, training and retention of tractor trailer drivers, the safe operation of a motor carrier transporting goods in interstate commerce, and the safe operation of commercial motor vehicles, which created a zone and culture of danger that constituted a dangerous mode of operation that was reasonably anticipated to cause injury to the traveling public and created a danger to all motorists exposed to its unsafe commercial motor vehicle drivers like CRUZ; and/or,

bb.  having a negligent mode of operation and poor safety culture that created danger to all motorists exposed to its commercial vehicle drivers, including the Plaintiff,

cc.  failure to maintain tractor trailer in a safe manner so as to comply with safety laws to include safe operating speed.

43.  RICH's negligence directly and proximately caused Plaintiff's Damages.

### DANGEROUS INSTRUMENTALITY LIABILITY OF RICH TRANSPORT, INC.

44.  Plaintiff realleges and incorporates herein by reference the above and foregoing paragraphs 1 through 43.

45.  RICH knowingly permitted and consented to CRUZ operating the Tractor-Trailer, which was under the exclusive control of RICH.

46.  RICH is, therefore, vicariously liable under the dangerous instrumentality doctrine for the negligence of CRUZ.

### DAMAGES

47.  Plaintiff realleges and incorporates herein by reference the above and foregoing paragraphs 1 through 47.

48.  As a direct and proximate result of the aforementioned negligence, the Defendants are liable under Mississippi law to the Plaintiff for their injuries and damages, including but not limited to the following:

   a. Past, and future pain and suffering;

   b. Past, and future loss of wages, benefits and wage earning capacity;

   c. Past, and future emotional distress and mental anguish;

   d. Pain and suffering;

   e. Pre-judgment and post-judgment interest;

   f. Loss of household services;

   g. Economic damages;

   h. Pre-judgment and post-judgment interest on the incurred expenses at the time of the filing of this Complaint;

    i.    Property damage, and;

    j.    All other damages allowed by law or the Court or jury sees fit to impose.

## PUNITIVE DAMAGES

49.    Plaintiff reallege and incorporate herein by reference the above and foregoing paragraphs 1 through 48.

50.    The actions of the Defendants constitute gross negligence and/or reckless disregard for Plaintiff's safety.

51.    Upon information and belief, Defendant CRUZ was grossly negligent in his operation of the Tractor-Trailer, failed in compliance with the Federal Motor Carrier Safety regulations, and was recklessly driving on Interstate 59 without the proper hazard warnings and driving under the minimum speed limit as governed by MS Code §63-3-509.

52.    Defendants' actions led to the foreseeable consequence of persons who were traveling on the roadway, such as Plaintiff's son being killed.

53.    Defendants' breach of the aforementioned duties led to foreseeable incident complained of and the eventual collision causing severe injury to the Plaintiff.

54.    Defendants actions/inactions were willful, wanton, grossly negligent and with a reckless disregard for the safety of the public as well as the deceased's safety.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays that at the end of the appropriate legal time, that the following should occur:

a.    Defendants be served with a copy of this Complaint;

b.    Defendants be required to file a written answer as called for by the Mississippi Rules of Civil Procedure;

c.    That a judicial, legal and/or factual determination would be made on the matters outlined in the Complaint and any amendments, and for any other relief requested.

d.  Plaintiff be awarded a judgment for actual damages and punitive damages against Defendants in the amount that the evidence would show and a jury will determine; and;

e.  Any and all other legal and/or equitable relief the evidence would show and a jury will allow.

## TRIAL BY JURY

Plaintiff respectfully demands a trial by jury of all issues and counts so triable herein.

Respectfully submitted, this the 21st day of November, 2023.

Respectfully submitted,

**JONAH STRINGER**

BY: *John D. Giddens*

COUNSEL FOR PLAINTIFF:

John D. Giddens (MSB No. 9357)
John D. Giddens, PA
226 North President Street
Jackson, Mississippi 39201
Telephone:   (601) 355-2022
Facsimile:    (601) 355-0012
john@law-inc.com

Darryl M. Gibbs (MSB No. 100232)
Chhabra & Gibbs, P.A.
120 North Congress Street, Suite 200
Jackson, Mississippi  39201
Telephone:   (601) 948-8005
Facsimile:    (601) 948-8010
dgibbs@cglawms.com